UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YAKOV ELIZAROV,

                Plaintiff,

v.

EQUITY EXPERTS LLC,

                Defendant.

_____/

Case No. 16-13285

Paul D. Borman
United States District Judge

Stephanie Dawkins Davis
United States Magistrate Judge

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Yakov Elizarov brought this action against Defendant Equity Experts, LLC, alleging violations of both the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and the Michigan Regulation of Collection Practices Act, Mich. Comp. Laws § 445.251 *et seq.*

Defendant purchased debt that Plaintiff incurred for failing to pay condominium assessments on a Waterford, Michigan unit that he ultimately lost to foreclosure. The specific conduct that Plaintiff challenges in this lawsuit is Defendant's filing of a collection action in the 51st Judicial District in Waterford, Michigan (where the condominium is located), rather than the 52nd Judicial District in Troy, Michigan (where certain relevant contracts were signed), or alternatively in a court in Maryland (where Plaintiff now resides). The 51st Judicial District and the

52nd Judicial District are both within Oakland County, Michigan, and relatively close to one another.

Both parties have moved for summary judgment. For the reasons below, the Court will deny Plaintiff's Motion for Summary Judgment, and grant Defendant's Motion for Summary Judgment.

## I.    BACKGROUND

**A.    Factual Background**

Plaintiff incurred the alleged debt at the center of this lawsuit in connection with his ownership of a condominium unit (the "**subject property**") in the Fountain Park South development in Waterford, Michigan.

Fountain Park South was formally established pursuant to the Michigan Condominium Act, Mich. Comp. Laws § 559.101 *et seq*., with the execution of a Master Deed on March 28, 2006, and the recording of that Master Deed in Oakland County, Michigan on April 5, 2006. (Def.'s Resp. Ex. A, Master Deed.) The Master Deed provides, relevantly, on its first page that Fountain Park South is subject to

> the covenants, conditions, restrictions, uses, limitations, and affirmative obligations set forth in this Master Deed and the Exhibits hereto, all of which shall be deemed to run with the land and shall be a burden and a benefit to the Developer, its successors and assigns, and any persons acquiring or owning an interest in the said real property, their grantees, successors, heirs, executors, administrators and assigns.

(Master Deed at 2, Pg ID 181.)

The Master Deed has two Exhibits: the by-laws of the Fountain Park South Condominium Association (the "**Association**") (*see* Master Deed at 19-59, Pg ID 198-238); and a series of surveys and maps that together constitute the Condominium Subdivision Plan (*see* Master Deed at 60-67, Pg ID 239-246). Article II of the by-laws governs monetary assessments by the Association against unit owners. Specifically, Article II empowers the Association to levy (and requires unit owners to pay) annual assessments, and provides for the levying of both discretionary and unit-owner-approved assessments by the Association. Article II of the by-laws also provides that unpaid assessments shall constitute liens upon the units of delinquent unit owners, and authorizes various enforcement mechanisms including collection and lien foreclosure lawsuits. (*See id.* at 19-23, Pg ID 198-202.)

In February 2007, Plaintiff purchased the subject property by warranty deed. (ECF No. 15, Pl.'s Mot. Ex. 1, Warranty Deed.) The final clause of the warranty deed provides as follows:

> Subject to easements, reservations and restrictions of record, and further subject to, [*sic*] this deed is given in fulfillment of a certain Land Contract dated 8/22/2006 between the parties hereto and is further subject to such encumbrances which may have attached or accrued since the date of said contract through the acts or ommissions [*sic*] of persons other than the grantors herein.

(*Id.* at 3, Pg ID 144.)

Plaintiff financed the purchase with a $172,475.00 loan from non-party Quicken Loans, Inc., which was secured by a mortgage on the condominium. The mortgage was recorded in Oakland County, Michigan on February 13, 2007. (ECF No. 21, Def.'s Resp. Ex. B, Mortgage.) The mortgage had several attachments, including a Condominium Rider which Plaintiff signed separately, and which provides that Plaintiff (identified in the Condominium Rider as "Borrower")

> shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

(*Id.* at 23, Pg ID 269.)

Plaintiff represents that in October 2009, he "left the State of Michigan and his Condominium [and] subsequently moved to Maryland where he maintains employment and residency." (Pl.'s Mot. at 2, Pg ID 123.)

On November 19, 2010, a lien was recorded against the subject property for nonpayment of assessments. The lien specified that the amount due to the Association was $770, "exclusive of interest, costs, attorney fees, and future assessments, which are also secured by this lien and must be paid in full to discharge the obligation." (Def.'s Resp. Ex. C, Lien.) Plaintiff defaulted on his mortgage shortly thereafter, and after foreclosure proceedings, he relinquished the

condominium pursuant to a sheriff's sale in December 2010. Approximately four years later, on December 11, 2015, the Association assigned to Defendant Equity Experts, LLC "all of [the] Association's right, title, interest, powers and options" in any unpaid sums owed by Plaintiff along with other unit owners, as well as any interest, collection and late charges, attorney fees, fines, and liens associated with the unpaid assessment. (Def.'s Resp. Ex. D, Assignment.)

On March 4, 2016, Defendant initiated a collection action against Plaintiff in the 51st Judicial District Court in Waterford, Michigan, where the property was located. In connection with that action, Defendant sent a summons and complaint by certified mail to Plaintiff at his Maryland address. (Pl.'s Mot. Ex. 2, Summons and Complaint.) The complaint alleged that Plaintiff (named as the defendant in that action) failed to pay his "share of assessments, special assessments, fines, and late fees," and that the sum of his deficiency plus accrued interest was $1204.47. (*Id*. at 4-5, Pg ID 148-49.)

On May 11, 2016, Defendant moved in the 51st Judicial District Court for a determination that Plaintiff had been served, representing in its motion that Plaintiff had informed Defendant's counsel of his receipt of the summons and complaint, and that Plaintiff rejected an initial settlement offer. (Pl.'s Mot. Ex. 3, Request for Special Consideration and Order Determining Proof of Service.)

The foregoing is all that the record contains regarding the collection action, and there is no indication of how, when, or even whether the action was terminated.

## B.    Procedural History

Plaintiff filed the instant two-count lawsuit on September 12, 2016 (ECF No. 1, Compl.), alleging that Defendant's prosecution of the collection action in the 51st Judicial District, where the condo was located, rather than in a venue in his now-home state of Maryland violated both the Fair Debt Collection Practices Act ("**FDCPA**"), 15 U.S.C. § 1692 *et seq.*, and the Michigan Regulation of Collection Practices Act ("**MRCPA**"), Mich. Comp. Laws § 445.251 *et seq*. The gravamen of Plaintiff's allegations is that even after Plaintiff notified Defendant's counsel that the assessments had already been paid, and despite Defendant's knowledge that Plaintiff no longer lived in Michigan, Defendant brought the collection action in an inconvenient forum in hopes of securing a default judgment against him.[1] Defendant answered the Complaint on October 5, 2016. (ECF No. 8, Answer.) Defendant denies that Plaintiff had paid the assessments. (Answer ¶ 11; ECF No. 21, Def.'s Resp. at Pg ID 169-70.) Plaintiff has provided no evidence that he paid the

---

[1] The Complaint also alleges that Defendant engaged and engages in "deceptive practices . . . by using false representations and deceptive means" in violation of 15 U.S.C. § 1692e, a separate provision of the FDCPA. (Compl. ¶ 27-28.) Plaintiff does not make any specific argument regarding these allegations in his Motion for Summary Judgment, however, and so the Court treats the Motion as seeking summary judgment on Plaintiff's FDCPA claim only on an improper-venue theory.

assessments.

After the close of discovery, Plaintiff moved for summary judgment on May 1, 2017. (ECF No. 15, Pl.'s Mot.) Defendant filed a response brief on June 1, 2017 (ECF No. 21, Def.'s Resp.). Plaintiff did not file a reply brief.

This Court held a hearing on Plaintiff's Motion for Summary Judgment on June 27, 2017. At that hearing, Defendant's counsel orally moved for summary judgment, and the Court permitted Plaintiff to file a brief in response to Defendant's oral motion. Plaintiff did so on July 13, 2017. (ECF No. 22, Pl.'s Resp.)

## II.    LEGAL STANDARDS

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of a motion for summary judgment where proof of that fact 'would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.'" *Dekarske v. Fed. Exp. Corp.*, 294 F.R.D. 68, 77 (E.D. Mich. 2013) (Borman, J.) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"In deciding a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party." *Perry v. Jaguar of Troy*, 353 F.3d 510, 513 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). At the same time, the non-movant must produce enough evidence to allow a reasonable jury to find in his or her favor by a preponderance of the evidence, *Anderson*, 477 U.S. at 252, and "[t]he 'mere possibility' of a factual dispute does not suffice to create a triable case." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004) (quoting *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Instead, "the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (alterations in original) (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

When presented with cross-motions for summary judgment, the Court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003). "The fact that the parties have filed cross motions for summary judgment does not automatically justify the conclusion that there are no facts in dispute." *Ely v. Dearborn Heights School Dist. No. 7*, 150 F. Supp. 3d 842, 849-50 (E.D. Mich. 2015) (citing *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th

Cir. 2003). In this context, a plaintiff and a defendant have different burdens:

> In a defensive motion for summary judgment, the party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).
>
> When the moving party also bears the ultimate burden of persuasion, the movant's affidavits and other evidence not only must show the absence of a material fact issue, they also must carry that burden. *Vance v. Latimer*, 648 F.Supp.2d 914, 919 (E.D. Mich. 2009); *see also Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992); *Stat–Tech Liquidating Trust v. Fenster*, 981 F.Supp. 1325, 1335 (D. Colo. 1997) (stating that where "the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be entered only if the movant submits evidentiary materials to establish all of the elements of the claim or defense").
>
> The plaintiff therefore "must sustain that burden as well as demonstrate the absence of a genuine dispute. Thus, it must satisfy both the initial burden of production on the summary judgment motion—by showing that no genuine dispute exists as to any material fact—and the ultimate burden of persuasion on the claim—by showing that it would entitled to a directed verdict at trial." William W. Schwarzer, et al., The Analysis and Decision of Summary Judgment Motions, 139 F.R.D. 441, 477-78 (1992) (footnotes omitted).

*Ely*, 150 F. Supp. 3d at 849-50.

Finally, all evidence in opposition to a motion for summary judgment must be capable of presentation in a form that would be admissible at trial. *See Alexander v. CareSource*, 576 F.3d 551, 558–59 (6th Cir. 2009) ("[T]he party opposing summary

judgment must show that she can make good on the promise of the pleadings by laying out enough evidence that will be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary.").

## III.    DISCUSSION

Plaintiff is not entitled to summary judgment on the FDCPA claim asserted in Count I of the Complaint for two reasons. First, there are genuine issues of material fact concerning the threshold question of whether Defendant is a "debt collector" under the FDCPA. Second, the record establishes that Defendant's choice of forum for the collection action was permissible under 15 U.S.C. § 1692i, which, depending on the nature of the debt sued upon, requires a debt collector to bring a collection action against a consumer only in the "judicial district or similar legal entity" where the real property at issue is located, where the contract sued upon was signed, or where the consumer resides at the commencement of the action.

As to the MRCPA claim asserted in Count II of the Complaint, Plaintiff's failure to prove—or even allege—conduct by Defendant that violates any provision of the MRCPA both precludes summary judgment for Plaintiff and warrants summary judgment for Defendant.

Consequently, the Court will deny Plaintiff's Motion for Summary Judgment, and grant Defendant's Motion for Summary Judgment.

## A.    Plaintiff's Motion for Summary Judgment

### 1.    FDCPA Claim (Count I)

Congress's stated purpose in enacting the FDCPA was "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Accordingly, the FDCPA operates as "a strict-liability statute: [a] plaintiff does not need to prove knowledge or intent, and does not have to have suffered actual damages. Structured as such, the FDCPA functions both to protect the individual debtor and advance the declared federal interest in 'eliminat[ing] abusive debt collection practices.'" *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 448–49 (6th Cir. 2014) (quoting 15 U.S.C. § 1692(e)). "Strict liability places the risk of penalties on the debt collector that engages in activities which are not entirely lawful, rather than exposing consumers to unlawful debt-collector behavior without a possibility for relief." *Id.* at 449.

Central to this case is the FDCPA's "fair venue" provision, which imposes the following venue requirements on actions by debt collectors against consumers:

Any debt collector who brings any legal action on a debt against any consumer shall--

(1) in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action only in a judicial district or similar legal entity in which such real property is located; or

(2) in the case of an action not described in paragraph (1), bring such action only in the judicial district or similar legal entity--

    (A) in which such consumer signed the contract sued upon; or

    (B) in which such consumer resides at the commencement of the action.

15 U.S.C. § 1692i(a).

In other words, § 1692i(a)(1) first establishes a "site of the property" rule for determining the proper venue in an action brought "to enforce an interest in real property securing the consumer's obligation," and the statute then sets forth two permissible venue options for all other debt-collection actions: the place where the consumer signed the subject contract (§ 1692i(a)(2)(A)), or the consumer's place of residence at the time the debt collector initiated the action (§ 1692i(a)(2)(B)).

A debt collector that brings an action against a consumer in a venue other than a "judicial district or similar entity" that corresponds to one of those three locations may be liable under the enforcement provisions of 15 U.S.C. § 1692k. The FDCPA creates one exception to this by way of an affirmative defense: a debt collector who violates § 1692i or any other provision of the statute may not be held liable if it "shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).

As discussed *infra*, there are genuine issues of material fact as to whether Defendant is a "debt collector" under the statute, and these issues are enough by themselves to preclude summary judgment in Plaintiff's favor. Even assuming that Defendant was a debt collector at the relevant times, the Court finds that while Defendant's initiation of a collection action in the 51st Judicial District may not have been permissible under the "real property" subprovision of 15 U.S.C. § 1692i(a)(1), it was permissible under the "contract" subprovision of 15 U.S.C. § 1692i(a)(2)(A). For that reason too, the Court will deny Plaintiff's Motion for Summary Judgment.

### i. There is a genuine issue of material fact as to whether Defendant is a "debt collector" under the FDCPA.

The venue requirements in 15 U.S.C. § 1692i apply to "debt collectors." Subject to a handful of exceptions not relevant here, the FDCPA provides two alternative definitions of "debt collector": (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," and (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6).

In *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017), the United States Supreme Court gave further definition to the second of the FDCPA's two alternative definitions of "debt collector"—that is, a person who "regularly

collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). At issue in *Henson* were FDCPA claims asserted against a company that purchased defaulted loans and then sought to collect on them for itself. The Court distinguished debt collectors from debt originators, explaining that "third party debt collection agents generally qualify as 'debt collectors' under the relevant statutory language, while those who seek only to collect for themselves loans they originated generally do not." *Henson*, 137 S. Ct. at 1721. The question before the *Henson* Court was "how to classify individuals and entities who regularly purchase debts originated by someone else and then seek to collect those debts for their own account." *Id.* Analyzing both the specific statutory text and the broader statutory context, the Court concluded that such individuals and entities are not "debt collectors" under the FDCPA. *See id.* at 1721-26. Before doing so, the Court paused to clarify that its holding did not extend to the "alternative definition" of "debt collector" set forth in the statute: "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." *Id.* at 1721. "Principal purpose" debt collectors, in other words, were outside of *Henson*'s scope altogether.

Based on the record before this Court, Defendant clearly falls within the class of persons or entities that the Supreme Court held in *Henson* do not count as debt collectors under the FDCPA. It is undisputed that Defendant purchased the debt at

14

issue in this case, and then brought the action in the 51st Judicial District Court to collect on the debt for its own account. Moreover, Plaintiff alleged in the Complaint that Defendant "is in the business of purchasing defaulted homeowners association fees from local associations at a discount, and them [*sic*] initiates collection actions in state court as an effort to collect said accounts." (Compl. ¶ 8.) Defendant admitted that "it purchases defaulted homeowners' association debts and pursues recovery of those outstanding debts" but denied the remainder of the allegation. (Answer ¶ 8.) Defendant also admitted that it "regularly attempts to collect defaulted debts in the form of defaulted homeowner association fees in the ordinary course of its business," and that it "regularly uses the state courts of Michigan to sue consumers and obtain judgements [*sic*] in the ordinary course of its business of collecting debts." (Compl. ¶¶ 6-7; Answer ¶¶ 6-7.) There is no real dispute that Defendant regularly purchases defaulted debts and collects them for its own account, and is therefore an entity which, under *Henson*, does not meet the "regularly collects . . . debts . . . owed or due another" prong of the FDCPA's definition of "debt collector."

Plaintiff must therefore show that Defendant meets the other prong of the definition of "debt collector": "any person who uses any instrumentality of interstate commerce or the mails in any business the *principal purpose of which is the collection of any debts*." 15 U.S.C. § 1692a(6) (emphasis added). The Sixth Circuit has held that the FDCPA's two definitions of this term have distinct meanings:

[C]onsidering § 1692a(6) as a whole, it is clear that Congress intended the "principal purpose" prong to differ from the "regularly" prong of its definition of "debt collector." *See Garrett v. Derbes*, 110 F.3d 317, 318 (5th Cir.1997) (per curiam). Thus, one "may regularly render debt collection services, even if these services are not a principal purpose of his business." *Id*. As another court has explained, "the word 'regular' is not synonymous with the word 'substantial.' Debt collection services may be rendered 'regularly' even though these services may amount to a small fraction of the firm's total activity." *Stojanovski v. Strobl & Manoogian, P.C.*, 783 F.Supp. 319, 322 (E.D.Mich.1992). Under this interpretation of "regular" or "regularly," an attorney may be a "debt collector" under the FDCPA even when the ratio of his debt collection efforts to other legal efforts is small. *Id*.

*Schroyer v. Frankel*, 197 F.3d 1170, 1174 (6th Cir. 1999). "To determine whether a defendant is a debt collector, the Court must 'look beyond the facts of the particular case . . .' [and] must not focus on 'the events of the particular transaction but on the principal purpose of the defendant's business and/or the defendant[']s regular activities.'" *Rogers v. RBC Mortg. Co.*, No. 11-11167, 2011 WL 3497432, at *6 (E.D. Mich. Aug. 10, 2011) (quoting *Golliday v. Chase Home Fin., LLC*, 761 F.Supp.2d 629, 635 (W.D. Mich. 2011)).

The record before this Court is silent on whether the "principal purpose" of Defendant's business is the collection of debts. Because the Supreme Court's decision in *Henson* precludes this Court from finding that Defendant is a "debt collector" under the "regularly collects" prong of the definition expressly invoked by Plaintiff, and because the record sheds no light on whether Defendant qualifies

under the "principal purpose" prong, the Court concludes that there is a genuine issue of material fact over whether Defendant can be sued under the FDCPA to begin with. Plaintiff cannot obtain summary judgment for that reason.

For a separate reason, as set forth below, even if Defendant is in fact a debt collector under the FDCPA, its decision to prosecute a collection action in the Michigan 51st District Court, while it may not have been permissible under the "real property" subprovision of 15 U.S.C. 1692i(a)(1), was permissible under the "contract" subprovision of 15 U.S.C. § 1692i(a)(2)(A), as discussed *infra*.

### ii. The 51st Judicial District Court may not have been a proper venue under the "real property" subprovision of 15 U.S.C. § 1692i(a)(1).

The real property subprovision of 15 U.S.C. § 1692i requires that a debt collector, "in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action only in a judicial district or similar legal entity in which such real property is located . . . ." 15 U.S.C. § 1692i(a)(1).

Plaintiff argues that § 1692i's real property subprovision is irrelevant here, since the association fees that Defendant attempted to collect constituted unsecured consumer debt rather than an enforceable legal interest in real property. However, Defendant counters that Michigan law expressly recognizes condominium association fees as a property right. To bolster this argument, Defendant cites *In re Spencer*, 457 B.R. 601 (E.D. Mich. 2011), in which the court held that for the

purposes of determining its dischargeability in bankruptcy, a debtor's obligation to pay condominium association fees was a property interest that arose from a covenant running with the land. *See id.* at 613-15. In *Spencer*, the court's conclusion relied in part on the principle, recognized in Michigan law, that a covenant will be found to run with the land "(1) when the parties intended the covenant to run with land, (2) when the covenant will 'affect or concern the land with which it runs,' and (3) when privity exists between the party claiming its benefit and the party burdened by it." *Id.* at 610 (quoting *Greenspan v. Rehberg*, 56 Mich. App. 310, 320-21 (1974)). As these three elements are present here, Defendant contends, the obligation that it sought to enforce in 2016 was a real property interest, and its choice of the 51st Judicial District Court as a venue for the action was proper under 15 U.S.C. § 1692i(a)(1).

This argument reads an important component out of the statute. The real property subprovision applies "in the case of an action to enforce an interest in real property securing the consumer's obligation." 15 U.S.C. § 1692i(a)(1) (emphasis added). Decisions both from the Sixth Circuit and from other circuits suggest that courts commonly understand this phrase to refer to mortgage foreclosure proceedings. *See, e.g., Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 462 (6th Cir. 2013) ("This section requires a debt collector bringing a legal action against a consumer 'to enforce an interest in real property securing the consumer's

obligation'—*e.g.*, a mortgage foreclosure action—to file in the judicial district where the property is located."); *Vien-Phuong Thi Ho v. ReconTrust Co., NA*, 858 F.3d 568, 584 (9th Cir. 2016) (discussing indications in the text of the FDCPA "that Congress understood that a mortgage foreclosure proceeding—an action to enforce an interest in real property securing the debtor's obligation—constitutes debt collection within the meaning of the FDCPA"); *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 179 (3d Cir. 2015) (explaining that "foreclosure meets the broad definition of 'debt collection' under the FDCPA" and noting that "it is even contemplated in various places in the statute" while citing § 1692i(a)(1) as an example); *Suesz v. Med-1 Sols., LLC*, 757 F.3d 636, 639 (7th Cir. 2014) (reading § 1692i(a)(1) to provide that "[i]f real estate is security for the loan, the suit must be brought where the property is located"). Neither the FDCPA's text nor the case law interpreting it expressly limits the scope of § 1692i(a)(1) to mortgage foreclosures. The issue is whether Defendant has shown that that the 2016 collection action was a proceeding to enforce a security interest in real property, as contemplated by § 1692i(a)(1).

Defendant admits that Plaintiff "defaulted on his Mortgage and it was foreclosed upon, culminating in a sheriff's sale in December 2010." (Def.'s Resp. at 3, Pg ID 170.) The record contains no documentation of the foreclosure or the sheriff's sale. But importantly, it also lacks any indication that any of those proceedings was legally deficient; that the foreclosure and sheriff's sale were void

or voidable for any other reason; or that the subject property was redeemed pursuant to Mich. Comp. Laws § 600.3240.[2] Absent any of these circumstances, the sheriff's deed vested in Quicken Loans, Inc., the purchaser of the subject property, "all the right, title, and interest which [Plaintiff] had at the time of the execution of the mortgage, or at any time thereafter . . . ." Mich. Comp. Laws § 600.3236.

While Defendant may have no longer possessed an "interest in [the subject] real property" that could be enforced against Plaintiff after Elizarov lost title to the property at the sheriff's sale in December 2010, the basis for the 2016 lawsuit related to "real property": real estate condominium debt. Thus, an interest in real property enforceable against Plaintiff's obligation to pay his assessments was created when the lien was entered against the subject real estate property in November 2010. Although the real property interest was extinguished, and the debt obligation morphed into unsecured debt when Plaintiff lost all "right, title, and interest" as a result of the sheriff's sale the following month, the Court finds it significant that the debt at issue was based upon real estate debt and not consumer debt.

_____

[2] Under that statute, a purchaser's deed for a foreclosed property is void if the mortgagor or certain other parties in interest "redeem[] the entire premises sold by paying" the purchaser "the amount that was bid for the entire premises sold" plus interest and fees within a specified time. Mich. Comp. Laws § 600.3240(1)-(2).

### iii. The 51st Judicial District Court was a proper venue under the "contract" subprovision of 15 U.S.C. § 1692i(a)(2)(A).

While Defendant's choice of Michigan's 51st Judicial District Court as a forum for its 2016 collection action may not have been justifiable under § 1692i(a)(1), and it is undisputed that Plaintiff no longer resided in the 51st Judicial District at the time the collection action was commenced, more analysis is required with regard to the "contract" subprovision of § 1692i(a)(2)(B). If Defendant was in fact a "debt collector" under the FDCPA and *Henson*, Plaintiff would be entitled to summary judgment only if no reasonable jury could find that Defendant's filing the collection action in the 51st Judicial District Court was permissible under that subprovision. Plaintiff cannot make this showing.

Actions by debt collectors that do not fall within § 1692i(a)(1)'s real property subprovision, *and* that are not initiated in the consumer's home forum under 15 U.S.C. § 1692i(a)(2)(B), must be brought "in the judicial district or similar legal entity . . . in which [the] consumer signed the contract sued upon." 15 U.S.C. § 1692i(a)(2)(A). Plaintiff argues that the 51st Judicial District Court was not a proper venue for Defendant's collection action under this subprovision because Plaintiff "has never signed a contract obligating him to pay condominium association dues." (Pl.'s Mot. at 5, Pg ID 126.)  Instead, Plaintiff argues, Defendant merely "relies upon a deed, unsigned by the Plaintiff" in attempting to justify filing the action in the 51st Judicial District Court under the contract subprovision. (Pl.'s Mot. at 6, Pg ID 127.)

Plaintiff's assertion that he never signed a contract obligating him to pay assessments is frivolous and belied by the record. Plaintiff appears to refer to the Warranty Deed by which he was granted the subject property in 2007, and it is true that that document does not bear his signature. But Plaintiff did sign the mortgage contract (*see* Def.'s Resp. Ex. B, Mortgage at Pg ID 261), which incorporates the Condominium Rider, and he separately signed the Condominium Rider itself (*see id.* at Pg ID 269-71). The Condominium Rider contains a covenant in which Plaintiff agreed to "perform all of [his] obligations under the Condominium Project's Constituent Documents." (*Id.* at Pg ID 269.) The Constituent Documents, in turn, include both the Association's by-laws (which obligated Plaintiff to pay assessments) and the Master Deed (which incorporates the by-laws). (*See id.*) Apart from this, Plaintiff specifically covenanted in the Condominium Rider that he would "promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents." (*Id.*) Plaintiff's contention that no signed document obligated him to pay assessments is incorrect on its face.

The relevant question then becomes in what "judicial district or similar legal entity" the contracts mentioned above were signed. The record is clear that the mortgage was both notarized and recorded in Oakland County, Michigan (*see* Def.'s Resp. Ex. B, Mortgage at Pg ID 248, 262), and the parties do not appear to dispute this fact. Instead, Plaintiff maintains that Defendant sued him in the wrong venue

*within* Oakland County, which contains nine judicial districts. *See* Mich. Comp. Laws § 600.8123. One of these is the 51st Judicial District, which consists of the township of Waterford, Michigan, the location of the condominium unit, and which is the forum in which Defendant brought its collection action in 2016. *See id.* § 600.8123(8). Another district is the 52nd Judicial District, which contains (among other municipalities) the city of Troy, Michigan. *See id.* § 600.8123(9)(d). Plaintiff's position appears to be that only the 52nd Judicial District Court would have been a proper venue under the contract subprovision: his counsel represented at the June 27, 2017 hearing that the relevant contracts were signed in Troy, and he argued in the Response to Defendant's Motion for Summary Judgment that "[t]he only District that was proper for Defendant to sue Plaintiff in for the unsecured defaulted association fees that it attempted to collect was: a) in the 52nd District Court of Troy, or b) in the Rockwood District Court in the State of Maryland where [Plaintiff] resides." (Pl.'s Resp. at 3, Pg ID 284.) However, these on-the-fly oral representations by Plaintiff's attorney are not competent evidence as to where the contract was signed.

In addition, for a separate reason, this Court is not persuaded that Defendant was required to file suit in the 52nd Judicial District in order to comply with the contract subprovision of the FDCPA's fair-venue provision.

The FDCPA does not define "judicial district or similar legal entity," and federal courts have not settled on a definition of the term. Indeed, only three of the federal circuits appear to have weighed in on the question at all. The Ninth Circuit held in 1994 that two Arizona counties were different "judicial districts" under the FDCPA because the state had "provided a formal transfer mechanism . . . between courts in the two counties," notwithstanding that Arizona "constitutes a single federal judicial district and has a unitary state superior court." *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1515 (9th Cir. 1994). More recently, the Second Circuit held that a debt collector violates the FDCPA's fair-venue provision "by suing a consumer in a city court . . . when that court lacks power to hear the action because the consumer does not reside in that city or a town contiguous thereto." *Hess v. Cohen & Slamowitz LLP*, 637 F.3d 117, 119 (2d Cir. 2011). More specifically, the court in *Hess* determined that "[b]ecause the court system of which [the defendant debt collector] availed itself is governed by laws that limit the territorial extent of those courts based on, *inter alia*, a defendant's contacts with the forum, . . . those laws delimit the 'judicial district' by which compliance with the FDCPA's venue provisions must be measured." *Id.* at 123. In arriving at this result, the Second Circuit "join[ed] a number of . . . federal district courts that have held that territorial subdivisions that are smaller than counties can form the pertinent 'judicial district' for FDCPA venue purposes." *Id.* at 126 n.8 (collecting cases).

In *Suesz v. Med-1 Sols., LLC*, 757 F.3d 636 (7th Cir. 2014) (en banc), the Seventh Circuit approvingly cited the Second Circuit's decision in *Hess*, and held that "the correct interpretation of 'judicial district or similar legal entity' in § 1692i is the smallest geographic area that is relevant for determining venue in the court system in which the case is filed." *Id.* at 638.

Under the *Suesz* approach, Michigan's district courts (rather than its circuit courts) would be its "judicial districts" for FDCPA purposes, since the smaller district courts are "relevant for determining venue" under Michigan law. *See* Mich. Comp. Laws § 600.8312(5). Under *Suesz*, then, Plaintiff's argument that Defendant violated the FDCPA by filing suit in the 51st Judicial District rather than the 52nd Judicial District would have some heft.

The Sixth Circuit has not adopted the *Suesz* test—or indeed any other test— for defining a court system's "judicial districts" under the FDCPA. The Sixth Circuit has, however, described the FDCPA's fair-venue provision broadly as having been enacted by Congress "to combat 'the problem of "forum abuse," an unfair practice in which debt collectors file suit ... in courts which are so distant or inconvenient that consumers are unable to appear' in order for the debt collector to a obtain default judgment against the consumer." *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 449–50 (6th Cir. 2014) (quoting S. REP. 95-382, 5, 1977 U.S.C.C.A.N. 1695, 1699). The Sixth Circuit has also made clear that "[t]o determine whether a

debt collector's conduct runs afoul of the FDCPA, '[c]ourts must view any alleged violation through the lens of the "least sophisticated consumer"—the usual objective legal standard in consumer protection cases.'" *Id.* at 450 (alteration in original) (quoting *Gionis v. Javitch, Block, Rathbone, LLP*, 238 F. App'x 24, 28 (6th Cir. 2007)). As the court has explained,

> [t]he basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This effort is grounded, quite sensibly, in the assumption that consumers of below-average sophistication or intelligence are especially vulnerable to fraudulent schemes. The standard thus serves a dual purpose: it (1) ensures the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices.

*Id.* (internal quotation marks omitted) (quoting *Gionis*, 238 F. App'x at 28).

In light of these principles, this Court is not persuaded that Defendant's filing the collection action in the 51st Judicial District, the location of the subject condo unit, rather than the 52nd District amounted to a violation of the FDCPA's fair-venue provision, given the factual location realities in the instant case, which are far different from the facts in the Second and Seventh Circuit decisions.

Defendant filed suit to collect Plaintiff's allegedly unpaid condominium association fees in a forum that was the forum in which the subject condominium was situated, near the district in which Plaintiff alleges, without evidence, that the governing contracts were signed. The contract subprovision of § 1692i(a)(2)(A) is

still in play, and whatever the proper test for "judicial district or similar legal entity" under the FDCPA, it is clear that the circumstances in this case do not involve the animating purposes behind the statute that the Sixth Circuit recognized in *Stratton*. Even viewed through the lens of the least sophisticated consumer, the forum in which Defendant filed the collection action cannot be fairly characterized as "so distant or inconvenient that [Plaintiff was] unable to appear," *Stratton*, 770 F.3d at 449, as would make clear that Defendant was attempting to obtain a default judgment, or otherwise engaging in deceptive collection practices.

Moreover, the decisions discussed above that would suggest that Michigan's district courts are the relevant "judicial districts" for FDCPA purposes are both nonprecedential in this Circuit and distinguishable from the instant fact situation. In *Hess*, the Second Circuit found it relevant that the forum chosen by the debt collector did not actually have jurisdiction over the collection action because of the consumer's lack of connections to the forum, and noted that the city court had dismissed the action for that reason. *See Hess*, 637 F.3d at 122–23. And in *Suesz*, the Seventh Circuit prefaced its analysis as follows:

> As this case illustrates, one common tactic for debt collectors is to sue in a court that is not convenient to the debtor, as this makes default more likely; or in a court perceived to be friendly to such claims; or, ideally, in a court having both of these characteristics. In short, debt collectors shop for the most advantageous forum. By imposing an inconvenient forum on a debtor who may be impecunious, unfamiliar with law and legal processes, and in no position to retain a lawyer (and even if he can

afford one, the lawyer's fee is bound to exceed the debt itself), the debt collector may be able to obtain through default a remedy for a debt that the defendant doesn't actually owe.

*Suesz*, 757 F.3d at 639.

The concerns that were identified in the *Hess* and *Suesz* decisions do not appear to be present here. Indeed, one critical distinction between those two cases and the instant case is the nature of the debt sued upon. *Hess* concerned credit-card debt, and *Suesz* involved medical bills. *Compare Hess*, 637 F.3d at 119, with *Suesz*, 757 F.3d at 638. Neither of them addressed a debt like that at issue here: that is, a debt arising from a contract signed by the debtor, but also one which (unlike the debts in *Hess* and *Suesz*) is inherently connected to a specific piece of real property. Therefore, even though the FDCPA's real property subdivision does not literally apply to this case, the debt that was the subject of Defendant's collection action was more akin to a debt relating to real estate than it was to the strictly consumer debts in *Hess* and *Suesz*. The risk of prejudice to the debtor is measurably less in a situation like this: even the least sophisticated consumer could more reasonably anticipate being sued for condominium fees in the district where the condominium sits (and which is proximate to the place of contracting), than he or she could expect to be sued in a district with no more connection to his or her debt than the fact that it is located in the same county as the building where the contract may have been signed.

The unique facts of this specific case support the Court's conclusion that Defendant's prosecution of the collection action in the 51st Judicial District Court did not run afoul of the contract subprovision of 15 U.S.C. § 1692i(a)(2)(A). The Court will deny Plaintiff's Motion for Summary Judgment as to his FDCPA claim for this reason.

### 2. MRCPA Claim (Count II)

Count II of the Complaint asserts a claim under the Michigan Regulation of Collection Practices Act ("**MRCPA**"), Mich. Comp. Laws § 445.252. Plaintiff appears to request summary judgment on this claim as well, but his Motion for Summary Judgment does not set forth any specific factual or legal basis to justify this. In fact, Plaintiff does not discuss the claim in the Motion at all besides stating summarily that Defendant meets the MRCPA's definition of "regulated person." (Pl.'s Mot. at 3, Pg ID 124 (citing Mich. Comp. Laws § 445.251(g)).)

Defendant disputes that it falls within this definition, but whether it does or not is immaterial given Plaintiff's failure to make any argument justifying summary judgment on his MRCPA claim. This Court has no obligation to "*sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party" in order to determine whether grounds for summary judgment exist. *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 n.11 (6th Cir. 2014) (quoting *Guarino v. Brookfield Tp. Trs.*, 980 F.2d 399, 410 (6th Cir. 1992)). To the extent Plaintiff

requests summary judgment on his MRCPA claim, that request is denied.

For the reasons stated above, the Court will deny Plaintiff's Motion for Summary Judgment as to both claims that Plaintiff has asserted in this action.

## B.    Defendant's Motion for Summary Judgment

Defendant's counsel made an oral Motion for Summary Judgment at the June 27, 2017 hearing, arguing that there are no factual disputes and that the case should be dismissed as a matter of law. The Court provided Plaintiff with an opportunity to file a written response to that Motion, and Plaintiff did so shortly after the hearing. (ECF No. 22, Pl.'s Resp.)

It is undisputed that the contracts which generated the legal obligation on which Defendant sued Plaintiff in the 51st Judicial District Court were signed in Oakland County, Michigan. For the reasons discussed *supra*, even assuming the truth of Plaintiff's unsupported statements that the contracts were signed in Troy, Michigan (and therefore within the state's 52nd Judicial District), the Court finds that Defendant's choice of the Waterford 51st Judicial District Court, where the condo unit was located, as a forum for its collection action was permissible under the contract subprovision of the FDCPA's venue statute, 15 U.S.C. § 1692i(a)(2)(A). For that reason, the Court will grant Defendant's Motion for Summary Judgment as to Plaintiff's FDCPA claim.

As to Plaintiff's MRCPA claim, Plaintiff alleged in his Complaint that the specific MRCPA provisions that Defendant violated were Mich. Comp. Laws §§ 445.252(f)(i)-(ii). (Compl. ¶ 32.) Those provisions prohibit debt collectors from "[m]isrepresenting in a communication with a debtor . . . (i) [t]he legal status of a legal action being taken or threatened[; or] (ii) [t]he legal rights of the creditor or debtor." *Id.* Plaintiff has not proven or even alleged conduct by Defendant that violates this or any other provision of the MRCPA. The Court will grant Defendant's Motion for Summary Judgment as to Plaintiff's MRCPA claim as well.

## IV.    CONCLUSION

The debt collection lawsuit in the instant case was not filed in a distant or inconvenient forum; it was filed in the district court where Plaintiff's subject condominium was located. This is not a case where the debt collector is using litigation as a vehicle for "abusive and unfair practices." *Stratton*, 770 F.3d at 451. Nor is it a case where the "least sophisticated consumer," *id.* at 450, would be prejudiced.

Accordingly, the Court hereby DENIES Plaintiff's Motion for Summary Judgment, and GRANTS Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.


Dated: May 9, 2018                                      s/Paul D. Borman
                                                       Paul D. Borman
                                                       United States District Judge

31

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 9, 2018.

s/D. Tofil
Deborah Tofil, Case Manager